Daniel J. McAvoy, J.
This is an application by petitioner, Joseph Barbara, Sr., to set aside and vacate the alleged service of a subpoena upon him by the Commission of Investigation of the State of New York.
The petitioner contends that there was no personal service of the subpoena upon him as required by law; that a copy of section 73 of the Civil Rights Law and a general statement containing the subject of the investigation in question was not delivered to him at the time of the alleged service and finally, that there was no proper tender made of adequate witness fees as provided by the statute.
There is no claim here that the commission was without jurisdiction to issue the subpoena in the first instance. The subpoena required the presence of the petitioner before the commission in the City of New York on November 6, 1958. On that date the petitioner’s name was called at a hearing before the commission and he failed to appear. The commission then proceeded to take testimony concerning the manner of the service of the subpoena. A transcript thereof has been presented to the court upon this application and shows the pertinent facts to be as follows:
*225 That on September 27, 1958 the subpoena was delivered by the commission to Sergeant Joseph Benenati of the New York State Police, for service on the petitioner; that on September 29,1958 he proceeded to the home of petitioner, Joseph Barbara, Sr., at B>. D. No. 1, Apalachin, New York; that he knocked on the front door and in response, petitioner’s wife appeared but did not open the door; that he identified himself and told her he had a subpoena for petitioner and, in brief, explained its contents ; that he requested that she summon petitioner which she refused to do, stating that he was ill in bed; that she likewise refused to accept the subpoena on his behalf and informed the sergeant that it would be useless for him to wait around for petitioner; that the sergeant then left the premises.
That petitioner’s wife had pulled aside the curtains on the front door and the above conversation took place through the door, which at no time was open; that on the following morning, September 30, 1958, the sergeant returned to the premises; that shortly prior thereto he called petitioner’s wife on the phone and after identifying himself asked her to call petitioner to the phone; that she stated he was ill and could not answer the phone; that on his second visit the sergeant rang the doorbell on several doors, and upon receiving no response, walked around the house; "that he looked in the window of a bedroom and saw the petitioner, with whom he was acquainted, lying on a bed; that the sergeant identified himself and then held the subpoena to the window and told petitioner he had a subpoena for him, and in substance told him the contents thereof; that petitioner looked in the direction of the sergeant and appeared to say something which was unintelligible; that petitioner’s wife then appeared in the bedroom and pulled the curtains closed; that the sergeant thereupon requested her to come to the front door so he could talk with her once again; that she eventually came to the front door, but as before did not open the same, and stood peering out between the curtains; that she was again advised by the sergeant of the purpose of his mission and she stated that the petitioner was sick in bed and he could not come to the door, and that it would be useless to try to get in; that the officer then told her he was going to affix the subpoena to the door, and he did so in her presence; that he enclosed it in an envelope and attached it to the door with Scotch tape; that thereupon the wife stated — “I haven’t touched that subpoena. You haven’t served it. You can leave it there.”
That pictures of the sergeant so affixing the subpoena to the door were taken at the time and introduced in evidence before *226 the commission; that immediately thereafter, the officer, by means of a portable amplifier or a so-called “bull horn ”, announced the contents of the subpoena a dozen or more times from various positions about the petitioner’s dwelling, including the front door and the window of petitioner’s bedroom; that his voice could be heard by another trooper stationed a fifth of a mile from the house; that the officer testified that the sound of a voice through such amplifier would be audible a quarter of a mile away — from his experience in the use thereof; that on this occasion he stood close to petitioner’s house when making* his announcements and at no time was over 10 to 12 feet away.
There was printed upon the face of the subpoena a general statement concerning the subject of the investigation before the commission, which related to organized crime and racketeering, including ££ the organization, purposes and participants thereof, and discussions had and decisions made at, a meeting held on the premises of Joseph Barbara, Sr., on or about November 14, 1957 at Apalachin, Tioga County, State of New York.”
Also printed upon the face of the subpoena was a notice to the witness that, in accordance with the provisions of section 73 of the Civil Bights Law of the State of New York, he was hereby personally served with a copy of said section, the provisions of which were set forth on the reverse side of the subpoena. A copy of the provisions of section 73 of the Civil Bights Law was in fact set forth in full upon the reverse side.
There was enclosed in the envelope with the subpoena which had been attached to the front door of petitioner’s residence, the sum of $16 for the witness’ fee and mileage.
In connection with the question of proper service of this subpoena issued by the commission, the statute provides that it must be served in the manner as prescribed for the service of a subpoena issued out of a court of record. (See Civ. Prac. Act, § 406.)
A subpoena issued out of a court of record to compel the attendance of a witness must be served as follows:
(1) A copy of the subpoena must be delivered to the witness.
(2) The fees allowed by law for mileage and for one day’s attendance must be tendered to him. (Civ. Prac. Act, § 404.)
The test of proper service of process has been enunciated in the leading* case of Hiller v. Burlington & Missouri Riv. R. R. Co. (70 N. Y. 223). There the court stated as follows (p. 227): “ The object of all service of process is said to be to give notice to the party on whom service is made, that he may be aware *227 of and may resist what is sought of him, and it is a general rule that any service must be deemed sufficient which renders it reasonably probable that the party proceeded against will be apprised of what is going on against him, and have an opportunity to defend. (In re Empire City Bank, 18 N. Y., 200; Happy v. Mosher, 48 N. Y., 313; Gibbs v. Queen Ins. Co., supra.) ”
In Heller v. Levinson (166 App. Div. 673, 674) the court stated with reference to the above rule as follows: ‘ ‘ This common-sense rule has been adopted in a number of cases, and wherever service by means other than personal delivery has been held ineffectual, it has been because the circumstances were such as to show that the defendant did not come into actual possession of the papers and that his attention was not drawn to their character, or that he had not willfully ignored them and refused to ascertain their nature for the purpose of evading service. ’ ’
In Levine v. National Transp. Co. (204 Misc. 202, affd. 282 App. Div. 720) the process server had been unable to serve a summons upon the defendant at his hotel. He took up a position across the street from defendant’s office and when he appeared on the street the process server dashed across the street to serve him, but was unable to reach him before the defendant had entered his car. The defendant immediately locked the door of the car so that when the process server reached it and attempted to open the door, he could not. The defendant refused to unlock it. The process server identified himself and the nature of the summons and displayed the summons by pressing it against the window of the car; the defendant nodded in answer to a question as to his identity and shook his head when asked to open the door; the defendant said “ O.K. ” when the process server told him he was going to leave the summons in the window frame. This was done and the court there held that it constituted valid service. •
In Gumperz v. Hofmann (245 App. Div. 622, 624, affd. 27N. Y. 544) Mr. Justice Untermyer there stated that “ It may fairly be said that there is a duty upon persons within the jurisdiction to submit to the service of process. Although that duty is not legally enforcible, it is, broadly speaking, none the less an obligation which ought not to be evaded by a defendant whom it is attempted to serve. * * * We cannot fail to be aware of the difficulties which beset the server of process on a defendant who is unwilling to be served, for it is evident that if he discloses his intentions such a defendant is likely to be even *228 more inaccessible than before. For that reason alone we should hesitate to -surround the service of process with unnecessary limitations. (See, also, Schenkman v. Schenkman, 206 Misc. 660.)
A witness cannot complain that service of a subpoena on him was insufficient where its contents were made known to him in a general way, and it was within his sight, and tendered to him, and he refused to accept it or to remain until it could be read to him. (See 97 C. J. S., Witnesses, § 23, p. 375.)
In United States v. Bryan (339 U. S. 323, 331) Mr. Chief Justice Vinson made the following pertinent observation: “ A subpoena has never been treated as an invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of the chase. If that were the case, then, indeed, the great power of testimonial compulsion, so necessary to the effective functioning of courts and legislatures, would be a nullity. ’ ’
It is obvious from the above recital of the facts that the petitioner here was attempting to evade service of the subpoena. It is equally manifest that he was apprised of the nature and purpose of the process and the proceeding against him and that he had an opportunity to defend himself, if he so desired. Indeed, as pointed out in -the Gumperz case (supra) it was his duty to submit to the service of process. There is nothing before the court to indicate that at the time of the attempted service, the petitioner was in extremis or too ill to accept it.
Evasion and willful refusal of a witness to accept the lawful process of a court or a duly constituted commission cannot be countenanced without encouraging resistance to such process and disrespect for law.
Therefore, this court holds that the service of the subpoena under the circumstances here, was valid. It must then follow that the service of a copy of the provisions of section 73. of the Civil Eights Law printed upon the reverse side thereof was likewise valid.
This leaves for consideration the remaining question as to' whether or not there was a proper tender of witness and mileage fees in an adequate amount. I am of the opinion that the placing of the sum of $16 in the envelope with the subpoena was, under the circumstances, a proper tender.
As to the sufficiency of the fees, this court has been asked by the petitioner to take judicial notice of the fact that the distance from the Village of Apalachin, New York to New York City, where the hearing was to be conducted, is according to the Dela *229 ware Lackawanna & Western Bailroad Company time table, 206.6 miles, and 210 miles by highway, according to the map of the American Automobile Association.
The commission, on the other hand, has asked the court to take judicial notice of the fact that, according to the New York State Highway Condition Map, prepared by the State Department of Public Works, the distance from Binghamton, New York, to Times Square in New York City is 165 miles.
From Binghamton to Apalachin, the American Automobile Association Map indicates the distance is 14 miles. Under these circumstances, the court will take judicial notice of the fact that the distance from Apalachin, New York to New York City is between 190 and 200 miles, and therefore the tender of the sum of $16 with the subpoena represents a substantial compliance with the statute (Civ. Prac. Act, § 1539).
The application of the petitioner to vacate the subpoena is therefore denied.
An order may be submitted in accordance herewith.