Gaetano DI PAOLA, Plaintiff,

v.

INTERNATIONAL TERMINAL OPERATING CO., Inc., Dominican Steamship Line, Brodin Line and Daido Line, Defendants,

and

INTERNATIONAL TERMINAL OPERATING CO., Inc., Rederiaktiebolaget Disa, Rederiaktiebolaget Poseidon, Aktiebolaget Svenska Orient Linien, and Japan Line, Ltd., Third-Party Plaintiffs,

v.

PIER 8 TERMINALS, INC., Third-Party Defendant.

No. 64 Civ. 1008.

United States District Court, S. D. New York.

Feb. 24, 1970.

Sylvia Miller, New York City, for plaintiff.

Fogarty & Nielsen, New York City, for defendant, International Terminal Operating Co., Inc.

MANSFIELD, District Judge.

Upon appeal from our decision and order dated December 22, 1968, granting summary judgment in favor of defendant International Terminal Operating Co., Inc. ("ITO"), this case was remanded "for further proceedings to establish the exact nature of the arrangements between ITO and Pier 8 and for a re-examination of the question of federal jurisdiction in light of that relationship," 418 F.2d 906 (2d Cir. Nov. 25, 1969).

Upon the original hearing of the motion the parties advised us that the stevedoring contract pursuant to which ITO performed its services was between Brodin, the shipper, and ITO, and that Pier 8 Terminals, Inc. ("Pier 8"), plaintiff's employer, was not a party thereto. Based on that information we held that plaintiff was not entitled to invoke the court's jurisdiction upon a "maritime contract" theory for the reason that although the stevedoring contract (then represented by the parties to be between Brodin and ITO) was maritime in nature, plaintiff did not "lie within the zone of responsibility contemplated by the contract or [its] implied obligations," as distinguished from the plaintiff in Sanderlin v. Old Dominion Stevedoring Corporation, 385 F.2d 79 (4th Cir. 1967).

At a hearing held on February 2, 1970, pursuant to the remand, the parties advised us for the first time that Brodin had contracted directly with Pier 8 rather than with ITO for the stevedor-

ing services rendered in the unloading of the motor vessel LIA, and that Pier 8 in turn subcontracted to ITO the performance of some of these stevedoring services, including the unloading and tiering of the coffee bags on the pier, but retained to itself the obligation to perform cooperage services pursuant to its contract with Brodin. Copies of the contracts have been received and marked as court's exhibits.

Under its contract with the Brodin Line (Court Ex. 2) Pier 8 agreed, among other things, to provide the services including "discharging cargo from stowage on board vessel to place of rest on pier * * *." (Par. 3(b) (II) (n)). Pier 8 further agreed to provide cooperage as follows: *"Coopering*: Supplying necessary labor for ordinary cooperage,"* (Par. 3(d) (n)); to provide all stevedoring labor required for discharge of cargo from the vessel (Par. 4(a)); to "provide longshoremen to sort cargo discharged on pier in accordance with bills of lading requirements" (Par. 4 (b)); and to "perform at pier where vessel is berthed, all long trucking as required anywhere within the limits of the dock * * *." (Par. 4(e)). The contract granted Pier 8 ten days "free time" within which to take delivery of cargo instead of the usual period of five days considered sufficient to permit consignees a reasonable opportunity to take delivery (Par. 3(f) (II) (g)); see American President Lines v. Federal Maritime Board, 115 U.S.App.D.C. 187, 317 F.2d 887 (1962). With Brodin's consent Pier 8 was permitted to sublet its discharge obligations (Par. 16(b)).

Pier 8's contract with ITO (Court Ex. 1), whereby it subcontracted to ITO some of Pier 8's duties under its contract with Brodin, obligated ITO as stevedore to "discharge cargo from * * vessel's holds * * * to or from a place of rest on the pier" (Pier 2(a)), and to "sort inward cargo by bill of lading lots" (Par. 2(h)). The contract, however, did not require ITO to perform any cooperage services.

■ Thus it now appears for the first time that we are dealing with two maritime contracts rather than one. These agreements also make it clear that plaintiff, pursuant to his employer's (Pier 8) contract directly with the shipowner, was engaged in performing cooperage services for the account of the ship at the time of the accident, and that ITO, pursuant to its contract with plaintiff's employer (Pier 8), was performing stevedoring services for the benefit of Pier 8 and the ship. Under such circumstances, in the absence of an express agreement to the contrary, ITO impliedly warranted that it would perform its services in a workmanlike manner, Crumady v. The J. H. Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); Waterman Co. v. Dugan & McNamara, 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960), and for breach of its implied warranty it might be held liable not only to the shipowner but also to Pier 8's employees engaged in performing ship services related to the ITO contract.

■ Plaintiff was in the same position as a seaman engaged to perform work for the benefit of the ship which the shipowner would otherwise be required to perform. As such he clearly fell within the zone of responsibility contemplated by the contractual arrangements between the parties. Crumady v. The J. H. Fisser, *supra;* Waterman Co. v. Dugan & McNamara, *supra*; DeGioia v. United States Lines Co., 304 F.2d 421, 425 (2d Cir. 1962); Sanderlin v. Old Dominion Stevedoring Corp., 385 F.2d 79, 81 (4th Cir. 1967). The fact that Pier 8, plaintiff's employer, may also have impliedly warranted to Brodin that it would perform its services in a workmanlike manner strikes us as immaterial. We are not here concerned with Pier 8's warranty, but with that of ITO, which was allegedly breached by the latter's negligent tiering of the coffee bags on the pier.

■ We also reject ITO's contention that plaintiff's suit must be dismissed on the ground that Pier 8 and ITO expressly contracted in Paragraph 22 of

their agreement to eliminate ITO's implied warranty. That paragraph provided:

> "22. This contract constitutes the full agreement between the parties hereto and no warranty of any nature shall be implied from any of the wording of this agreement."

The warranty sued upon here is implied from the work performed by ITO and not from any of the wording of the ITO-Pier 8 agreement. Furthermore, the identical clause has twice been held not to constitute a waiver of the implied warranty to perform the work in a workmanlike manner. See Caputo v. Kheel et al., 291 F.Supp. 804, 809 (S.D.N.Y. 1968) (per Weinfeld, J.); Brattoli v. Kheel, 302 F.Supp. 745, 752 (E.D.N.Y. 1969) (per Judd, J.). We are persuaded by the reasoning of Judges Weinfeld and Judd that the quoted clause does not apply to the warranty here under consideration.

Our opinion dated December 23, 1968, insofar as it discusses plaintiff's "maritime tort" theory still stands. However, in view of the newly disclosed facts with respect to the contracts between the parties, we must, for the reasons set forth above, withdraw that part of the opinion dealing with the "maritime contract" theory and deny defendant's motion for summary judgment.

It is so ordered.