James R. **SPEARING**, Plaintiff,

v.

**MANHATTAN OIL TRANSPORTATION CORPORATION**, Defendant and Third-Party Plaintiff.

**HUDSON TANK STORAGE COMPANY**, Defendant,

v.

**HUDSON TANK STORAGE COMPANY**, Third-Party Defendant.

No. 69 Civ. 484.

United States District Court, S. D. New York.

April 15, 1974.

See also, D.C., 317 F.Supp. 829.

Sylvia Miller, New York City, for plaintiff; Chester A. Hahn, New York City, of counsel.

Alexander, Ash, Schwartz & Cohen, New York City, for Manhattan Oil Transp. Corp.; Sidney A. Schwartz, Irwin H. Haut, New York City, of counsel.

Hill, Betts & Nash, New York City, for Hudson Tank Storage Co.; Robert S. Blanc, New York City, of counsel.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

LEVET, District Judge.

Plaintiff James R. Spearing (hereinafter "Spearing") commenced this action against Manhattan Oil Transportation Corporation (hereinafter "Manhattan") and Hudson Tank Storage Company (hereinafter "Hudson"). Plaintiff's complaint[1] alleged the following: That on September 10, 1968 Spearing was a seaman aboard Manhattan's barge, the Betty K; that the Betty K was tied up to a pier at Weehauken, N. J., owned by Hudson; that Hudson owned certain oil storage tanks adjacent to its pier; that the Betty K was discharging oil into Hudson's tanks; that plaintiff went ashore to obtain instructions regarding discharge of the oil and to obtain drinking water; that while walking between Hudson's tanks plaintiff was caused to fall by an improper walkway.

A United States Marshal delivered the summons and complaint in hand to the president of the Hudson corporation at Hudson's premises in Weehauken, New Jersey.[2]

Plaintiff's complaint alleged two claims against Manhattan: (1) That Manhattan is liable to plaintiff under the Jones Act, 46 U.S.C.A. § 688 (hereinafter the "Jones Act") for negligence; and (2) that Manhattan is liable to plaintiff under the general maritime law for unseaworthiness of the Betty K.

Manhattan's answer to plaintiff's complaint denied that it was liable and contended that plaintiff's own negligence was the sole proximate cause of his alleged injuries. Manhattan has withdrawn all other affirmative defenses. (9–11)[3] Manhattan's answer also alleged a cross-claim against then defendant Hudson,[4] stating various theories of recovery. Fearing that plaintiff failed to properly obtain full in personam jurisdiction over Hudson's person, Manhattan filed a third-party complaint against Hudson on the same day that it answered plaintiff's complaint. A United States Marshal handed the summons and third-party complaint to the president of the Hudson corporation at Hud-

---

1. In the pretrial order the parties stipulated that their pleadings were amended in accordance with the statements of their claims within the pretrial order. References in this opinion to the pleadings are to the pleadings as amended in accordance with the pretrial order.

2. See Marshal's affidavit on Return on Service of Writ.

3. Unless otherwise indicated numbers in parentheses refer to the stenographic minutes of the trial before this court on November 26 and 27 and December 14, 1973.

4. For reasons given below, this court has jurisdiction over Hudson's person solely in its capacity as a third-party defendant.

son's premises in Weehauken, New Jersey.[5]

Manhattan's third party complaint alleged two claims against Hudson: (1) That Hudson is or may be liable to Manhattan for all or part of plaintiff's claims against Manhattan; and (2) that Hudson is liable directly to plaintiff "in accordance with Rule 14(c)" of the Federal Rules of Civil Procedure (hereinafter referred to as "Rule" and by number).

Plaintiff's complaint discloses the following direct claims against Hudson:

(1) That Hudson is jointly liable with Manhattan for the unseaworthy condition allegedly due to the improper walkway;

(2) That Hudson was negligent, proximately causing plaintiff's injuries, and is liable therefor under the Jones Act; and

(3) That Hudson breached an implied warranty of workmanlike service which plaintiff contended makes Hudson directly liable to plaintiff under the general maritime law.

Hudson made timely objections to plaintiff's complaint[6] and Manhattan's third party complaint[7] alleging as to both lack of jurisdiction over the person and insufficiency of service of process. For reasons given in the Discussion, Hudson is subject to this court's personal jurisdiction solely in its capacity as a third-party defendant.

After hearing the testimony of the parties, examining the exhibits and the Proposed Findings of Fact and Conclusions of Law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. This court has jurisdiction over the subject matter and parties to this action. (46 U.S.C.A. § 688, 28 U.S.C.A. § 1331.) (See Discussion, pages 11 and 12)

2. Manhattan was incorporated in New York. (PTO–3(a)(i)[8]) On September 10, 1968 it owned the barge "Betty K." (21, 24; PTO–3(a)(iv)) The Betty K contained ten oil tanks and a cabin. (24, 27, 31, 39) At 8:30 A.M. on September 10, 1968 the Betty K was tied up to Hudson's dock in Weehauken, New Jersey. (33)

3. On September 10, 1968 Manhattan staffed the Betty K with two employees, plaintiff Spearing and George Rengstorff (hereinafter "Rengstorff") who was the senior mate on board the Betty K. (26, 27, 145; PTO–3(a)(iii).

4. Hudson, third-party defendant herein, was incorporated in New Jersey. (PTO–3(a)(ii)) On September 10, 1968 Hudson owned a tank farm in Weehauken, New Jersey near the Hudson River. (191, 273; see Ex. R)[9]

5. On September 10, 1968 Hudson's tank farm at Weehauken, New Jersey consisted of oil storage tanks surrounded in the most part by a 5½ foot wall. (66, 216, 269, 276; see Exs. B and R) The area enclosed by the wall was oblong in shape, approximately 340 feet long and 90 feet wide. (See Ex. R) The length of the enclosed area ran from east to west. (Ex. R) On September 10, 1968 Hudson owned a dock adjacent to the south wall just east of the middle of the south wall. This dock was contiguous with the Hudson River. (Ex. R) At a point twenty feet east of the dock, the south wall was broken down to ground level. (Ex. R)

6. On September 10, 1968 Hudson owned and maintained an office located just north of the north wall at its west corner. (Ex. R.) There were three

5. See United States Marshal's affidavit on the summons.

6. See Hudson's answer to plaintiff's original complaint.

7. See Hudson's answer to the third-party complaint.

8. The parties stipulated certain facts in the pretrial order. The court refers to the said order as "PTO" and by paragraph number.

9. Exhibit R accurately represents the tank farm as of September 10, 1968. (220)

routes (171) to go from the dock to Hudson's office:

(a) One could cross over the break in the wall. (49, 226–227; Ex. R) Fifteen feet west there was a catwalk on which one could walk. (Ex. R) The catwalk consisted of metal gratings, 30 inches wide, placed end-to-end atop metal bracings. (191–192) The catwalks ran between the tanks through the length of the tank farm to the northwest corner. (Ex. R) From there a stairway over the northwest end of the wall led directly to the office. (Exs. R and C) This route was approximately 330 feet long (Ex. R); or

(b) One could cross the south wall by means of a ladder leaning against it at a point approximately opposite to the west corner of the dock. This led to a second catwalk which joined with the catwalk above described. This route was approximately 290 feet long (Ex. R); or

(c) One could follow a path outside the south and west walls which led from the dock to the office. (Ex. R) The part of this path which bounded the south wall was also known as the "stringpiece." (171–172) This route was 280 feet long and was open and unencumbered on the morning of September 10, 1968. (65, 342; Exs. B, C and R)

7. Spearing's duties aboard the Betty K were (1) to hook up hoses for discharging or loading of oil; (2) to "sweep" the tanks at the end of discharging oil therefrom; and (3) to tie up the barge with the tug or a pier. (25–26) As of September 10, 1968 Spearing had served on board the Betty K or on other barges in the same capacity for nine years. (21–23) I find that Spearing was a "seaman," acting in the course of his employment on the morning of September 10, 1968. 46 U.S.C.A. § 688.

8. On September 10, 1968 there was a water container holding undrinkable water in the cabin of the Betty K. (96–97) The cabin was a suitable place in which to change into work clothes (27, 31); there is no further relevant credible evidence concerning the cabin's facilities.

9. At 8:30 A.M. on September 10, 1968 two of the Betty K's tanks were filled with oil owned by Brazilian Industrial Oils (hereinafter "B. I. O."). (28, 186, 219–220)

10. Manhattan had previously agreed to discharge the said B. I. O. oil into Hudson's tank farm as follows: On September 5, 1968 an agent of B. I. O. instructed Hudson that Manhattan would be delivering oil owned by B. I. O. for storage at Hudson's tank farm. (190, 219–220) On or about September 5, 1968 either Hudson called Manhattan or Manhattan called Hudson to agree on a date not more than four days off for Manhattan to deliver the said oil. (188–191, 219–220, 274–275) Manhattan and Hudson had no written agreement. (219) There is no further relevant evidence of Hudson's contacts with Manhattan in arranging for the September 10th delivery.

11. At about 8:40 A.M. on September 10, 1968 Spearing and Rengstorff began discharging the first of the two tanks of oil Manhattan had previously agreed to discharge. (40, 303) At about 11:20 A.M. Spearing went ashore to fill two bottles with drinking water. (43–44, 46, 96, 304) Spearing then had no knowledge as to the location of any water spigot at the tank farm (95) and there is no relevant evidence in this record as to the location of such water spigot on the morning of September 10, 1968.

12. Spearing chose the route that began with the break in the wall and led over catwalks through the tank farm, although he knew that the route down the stringpiece to the office was open to him. (65; see Finding of Fact No. 6(a)) He crossed over the break in the wall and commenced to walk on the catwalk (48–50, 65, 68; Ex. 3) and walked approximately 32 feet on the catwalk. (68; see Ex. R) At this point one of Hudson's employees asked Spearing where he was going; Spearing replied

that he was going for drinking water. Hudson's employee responded, "you are not allowed in this way, you have to go along the stringpiece." (304, 319–320, 332) Nevertheless, Spearing continued to proceed on the catwalk. (65, 68, 304; see Ex. R)

13. Then, after Spearing had walked on some 47 feet further, he was confronted with an 8 foot gap in the metal gratings. (53, 68, 192, 243; see Ex. R) A second Hudson employee was standing about 10 feet from Spearing near the gap; he told Spearing to watch his step. (363–365, 373, 376–377)

■ 14. The gap and its constituent parts were as follows: There was a dirt bed about 10 inches below the level of the catwalk. (245, 312–313, 315–316) There were two pipes in the gap. (54, 72) Each ran along an opposite side of the gap (69, 243) and in the same direction as the catwalk which led to and away from the gap. (55, 70, 243) Each pipe was about 4 inches in diameter. (54–55, 69, 83, 243) The tops of both were about 4 inches below the catwalk (197–198, 244, 315–316) and the bottoms of both were about 1 inch above the ground. (244) They were about 22 inches apart. (243) They were oily. (70, 71, 73, 367) I find that Spearing actually knew that this was a dangerous route to follow and, hence, was contributorily negligent.

15. Spearing, for some reason, intended to step on the right hand pipe and did so with his right foot. (55, 84, 100) From there he had intended to step across to the other part of the catwalk. (55–56, 69, 71–72) When he placed his right foot down on the right hand pipe it slipped on oil and he fell. (56, 71) Before stepping down he did not inspect the pipe to see whether he was about to place his foot on an oily spot, although he knew that the pipes were oily. (70, 73, 74) Immediately after he fell he went to Hudson's office for medical attention. (74, 88–89)

## DISCUSSION

### I.

## THE COURT'S SUBJECT MATTER JURISDICTION

### A. PLAINTIFF'S CLAIM AGAINST MANHATTAN

■ This court has jurisdiction of the subject matter of plaintiff's claim charging Manhattan with negligence. 46 U.S.C.A. § 688; 28 U.S.C.A. § 1331. It has pendent jurisdiction of plaintiff's claim charging Manhattan with violation of the general maritime law. Romero v. International Terminal Operating Co., 358 U.S. 354, 380–381, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959).

### B. MANHATTAN'S THIRD-PARTY CLAIMS AGAINST THIRD-PARTY DEFENDANT HUDSON

■ Manhattan asserted an indemnity claim and a substitute defendant claim against Hudson. The court has deemed certain of plaintiff's claims to be direct claims against Hudson in the latter's capacity as a substitute defendant. (See below) This court's jurisdiction of the subject matter of plaintiff's and Manhattan's claims against Hudson is ancillary to the court's jurisdiction of the subject matter in the main action. See Note 12 of the Appellate Court's opinion in Leather's Best, Inc. v. S.S. Mormaclynx, 451 F.2d 800, 810–811 (2d Cir. 1971); 3 Moore's Federal Practice ¶ 14.36, at pp. 14–751, 752.

### II.

## THE COURT'S JURISDICTION OVER THE PARTIES TO THIS ACTION

### A. MANHATTAN

■ It is subject to the court's personal jurisdiction for the reason that it has waived its objections thereto. Rule 12(h)(1)(B).

## B. HUDSON

■ 1. As an originally-named defendant Hudson was not amenable to the court's personal jurisdiction. Hudson was a New Jersey corporation. (See CPLR §§ 301, 313, McKinney's Consol.Laws, c. 8) There is no evidence on the record that it designated any agent to receive process. (See CPLR § 318; Business Corporation Law §§ 304, 305, McKinney's Consol.Laws, c. 4) It did not transact any business in New York. (See Finding of Fact No. 10; see CPLR § 302(a) 1) It did not commit a tort within New York. (See CPLR § 302(a) 2) Its conduct outside of New York did not cause injury to plaintiff "within the state." (See CPLR § 302(a) 3) In these circumstances, Hudson is not amenable to the court's jurisdiction in its capacity as an originally-named defendant.

■ 2. In its capacity as a named third-party defendant Hudson is subject to the court's personal jurisdiction for the following reasons: Under Rule 4(f) process is effective to give the court personal jurisdiction over a purported third-party defendant served within 100 miles of the court house but outside the forum state's boundaries if such third-party defendant was one over whom the "bulge" state [10] has chosen to exercise personal jurisdiction. Coleman v. American Export Isbrandtsen Lines, Inc., 405 F.2d 250 (2d Cir. 1968). This court judicially notices (In re Barbara, 14 Misc.2d 223, 228–229, 180 N.Y.S.2d 924 (Sup.Ct., Tioga Co., 1958), aff'd, 7 A.D.2d 340, 343–344, 183 N.Y.S.2d 147 (3d Dept.1959)) that Weehauken, New Jersey, where Hudson was served with process (see above) is within 100 miles of the United States Court House. Moreover, New Jersey has "chosen" to exercise personal jurisdiction over a New Jersey corporation served at its New Jersey premises by manual delivery to the president of the corporation. See New Jersey Court Rules § 4:4–4. Thus the court has personal jurisdiction over Hudson.

■ Hudson also objected to the sufficiency of service of process. By its own terms Rule 4(f) authorizes service in the "bulge" state "in the manner stated in paragraphs (1)–(6) of subdivision (d) of this rule * * *." Thus, service in a manner provided by Rule 4(d)(3) constitutes sufficient service of process in pursuance of Rule 4(f). Accord, Coleman, supra. It is indisputable that delivery of the summons and third-party complaint, in hand, to the president of the third-party defendant corporation satisfied Rule 4(d)(3). Accordingly, service of process was valid. Under these circumstances, the court deems that plaintiff's direct claims against Hudson in its capacity as an originally-named defendant are its direct claims against Hudson in its capacity as third-party defendant.

### III.

## PLAINTIFF'S CLAIMS AGAINST MANHATTAN

### A. BURDEN OF PROOF

■ It was plaintiff's burden to prove by a fair preponderance of the credible evidence: (a) That Manhattan was negligent, Musgrave v. Bronx Towing Line, Inc., 219 F.Supp. 918 (S.D.N.Y.1963); or (b) That the Betty K was unseaworthy, Grillo v. United States, 177 F.2d 904 (2d Cir. 1949); and (c) That either of the above wrongs was a proximate cause of plaintiff's injuries on September 10, 1968; Musgrave, supra; Grillo, supra.

### B. THE MERITS OF PLAINTIFF'S CLAIMS AGAINST MANHATTAN

1. Manhattan's alleged negligence under the Jones Act.

■ Manhattan breached no duty to plaintiff which would constitute neg-

---

10. The "bulge" state is the state where the third-party defendant is served and which is not the forum state.

ligence. Manhattan was under no duty to plaintiff to inspect, care for, or warn plaintiff of all conditions beyond the dock and in areas under Hudson's exclusive control. Paul v. United States, 205 F.2d 38 (3d Cir. 1953), cert. denied, 346 U.S. 888, 74 S.Ct. 140, 98 L.Ed. 392 (1953); Dangovich v. Isthmian Lines, Inc., 327 F.2d 355 (2d Cir. 1964), aff'g, 218 F.Supp. 235 (S.D.N.Y.1963); Wheeler v. West India S.S. Co., 103 F. Supp. 631 (S.D.N.Y.1951), aff'd, 205 F. 2d 354 (2d Cir. 1953), cert. denied, 346 U.S. 889, 74 S.Ct. 141, 98 L.Ed. 393 (1953). Manhattan was bound to provision its barge with adequate drinking water. However, plaintiff failed to prove by a fair preponderance of the credible evidence that Manhattan had notice of the lack of drinking water. Williams v. Tide Water Associated Oil Co., 227 F.2d 791, 794 (9th Cir. 1955), cert. denied, 350 U.S. 960, 76 S.Ct. 348, 100 L.Ed. 834 (1956). Finally, there is no evidence on the record that Manhattan breached its duty, Hopson v. Texaco, Inc., 383 U.S. 262, 86 S.Ct. 765, 15 L. Ed.2d 740 (1966), to exercise due care in agreeing to deal with Hudson.

2. Manhattan's alleged liability for unseaworthiness under the general maritime law.

■■■ Under the general maritime law, Manhattan is liable to plaintiff, its seaman, for the unseaworthiness of its barge or appurtenant appliances which proximately caused plaintiff's injuries. See The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903); Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944). The facts proved fail to sustain liability of Manhattan on this theory. The condition of the catwalk at the point of Spearing's accident (see Findings of Fact Nos. 5, 6, 12 and 13) was not an "appurtenant appliance."

■■■ Manhattan breached its duty to Spearing under the general maritime law because it failed to supply the barge with adequate drinking water. See Dixon v. The Cyrus, Fed.Cas.No.3,930 (D.

Pa.1789). This constituted an unseaworthy condition.

■■■ However, in order for plaintiff to recover against Manhattan it is not enough for plaintiff to prove the existence of an unseaworthy condition. Plaintiff must also prove that such condition proximately caused the injuries sustained by plaintiff. See Blier v. United States Lines Co., 286 F.2d 920, 925 (2d Cir. 1961), cert. denied, 368 U. S. 836, 82 S.Ct. 32, 7 L.Ed.2d 37 (1961); G. Gilmore and C. Black, The Law of Admiralty § 10–24 at 702 (1957).

■■■ Plaintiff's accident was proximately caused by defendant's conduct *if* it was a direct consequence of that conduct and the same general sort of accident that was risked by defendant's conduct. In re Kinsman Transit Co., 338 F.2d 708, 724 (2d Cir. 1964), cert. denied, Continental Grain Co. v. Buffalo, 380 U.S. 944, 85 S.Ct. 1026, 13 L.Ed.2d 963 (1965), after remand, 388 F.2d 821 (2d Cir. 1968). The facts proved fail to satisfy this test of proximate cause. Plaintiff's accident was, at most, an indirect consequence of the lack of drinking water. Moreover, plaintiff's fall was clearly not "the same general sort of accident that was risked" by the lack of drinking water.

## IV.

## PLAINTIFF'S CLAIMS AGAINST HUDSON

### A. HUDSON'S ALLEGED LIABILITY UNDER THE JONES ACT

■■■ Plaintiff failed to prove by a fair preponderance of the credible evidence that Hudson is liable to it under the Jones Act. "The Supreme Court has held that the statute [the Jones Act] affords a right of recovery only against employers, Cosmopolitan Shipping Co. v. McAllister, 1949, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692, and no employer-employee relationship existed between the parties to this action." Paduano v. Yamashita Kisen Kabushiki Kaisha, 221 F.2d 615, 616 (2d Cir. 1955).

## B. HUDSON'S ALLEGED LIABILITY UNDER THE GENERAL MARITIME LAW

Plaintiff contends: That discharge of the first tank of oil was completed between 10:50 A.M. and 11:00 A.M.; that at 11:20 A.M. he went ashore to inquire about discharge of the second tank of oil; that when he made his trip ashore at 11:20 A.M. and suffered his injuries he was therefore "engaged in performing ship services related to * * * [Hudson's] contract" with Manhattan; that Hudson was a stevedore and breached an implied warranty of workmanlike service which plaintiff contends makes Hudson directly liable to plaintiff. Plaintiff relies on Di Paola v. International Terminal Operating Co., 311 F.Supp. 685, 687 (S.D.N.Y.1970), on remand, 418 F.2d 906 (2d Cir. 1969) for this proposition.

The foundation for this argument is that discharge of the first tank of oil was completed by 11:00 A.M. This contention is contradicted by the fair preponderance of the credible evidence and consequently the remainder of the argument is unavailing. The barge commenced pumping the first tank of oil at 8:40 A.M. (See Finding of Fact No. 11) This tank contained 200 tons of tung oil which the barge pumped out at a top speed of 50 tons an hour. (92, 137, 234, 236, 261–262, 362) At the given rate, discharge of the first tank of oil could have been completed no earlier than 12:40 P.M. (according to the court's calculation). In short, discharge of the first tank of oil could not, as plaintiff contends, have been completed by 11:00 A.M.

## V.

### PLAINTIFF'S OWN DUE CARE

When Spearing chose the route through the tank farm he knew that the route down the stringpiece and around the tank farm to the office was open to him. (65) In fact, the latter route was a shorter route to the office than the route which he chose. (See Finding of Fact No. 6) Moreover, there is no credible evidence on the record as to why plaintiff chose the route which went through the tank farm. Once in the tank farm, plaintiff ignored warnings from Hudson employees. He knew that the pipes were oily, yet he stepped down on the right hand pipe without inspecting it.

It was defendant Manhattan's burden to prove by a fair preponderance of the credible evidence that Spearing was negligent in caring for his own safety. Fleming v. American Export Isbrandtsen Lines, Inc., 318 F. Supp. 194, 197 (S.D.N.Y.1970), modified on other grounds, 451 F.2d 1329 (2d Cir. 1971). Defendant Manhattan has proved by a fair preponderance of the credible evidence that Spearing failed to exercise reasonable care for his own safety. I find that plaintiff's negligence was the sole cause of his injuries. Bohannon v. United States, 92 F.Supp. 700 (S.D.N.Y.1950), aff'd mem. 185 F.2d 678 (2d Cir. 1951); Oswalt v. Williamson Towing Co., 357 F.Supp. 304, 308–309 (N.D. Miss.1973).

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and subject matter of this action. 46 U.S.C.A. § 688; 28 U.S.C.A. § 1331.

2. Plaintiff failed to prove by a fair preponderance of the credible evidence that Manhattan is liable to it either under the Jones Act or under the general maritime law.

3. Plaintiff failed to prove by a fair preponderance of the credible evidence that Hudson is liable to plaintiff under the Jones Act or the general maritime law. Plaintiff neither alleged nor proved any other cause of action, at common law or otherwise, against Hudson.

4. Defendant Manhattan proved by a fair preponderance of the credible evidence that plaintiff's own negligence was the sole cause of his injuries.

5. Manhattan has no right to indemnity against Hudson.

6. Defendant Manhattan is entitled to judgment dismissing the complaint of plaintiff, Spearing, together with costs and disbursements in this action.

7. Third-party defendant, Hudson, is entitled to judgment dismissing the third-party complaint of third-party plaintiff, Manhattan, together with costs and disbursements against Manhattan in this action.

Settle judgment pursuant hereto upon notice.